**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| ANDREW JAMES MCGONIGLE, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DOM STORES LLC,<br><br>Defendant. | Case No.: 1:26-cv-00869-RDA-IDD |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 3

III. LEGAL STANDARD ........ 3

IV. ARGUMENT ........ 4

A. Count I of the Amended Complaint Must Be Dismissed Because 47 U.S.C. §227(c) Does Not Prohibit Text Messages ........ 4

1. Statutory and Regulatory Background ........ 4

2. Following *Loper* and *McLaughlin*, the TCPA Must Be Interpreted as Written When it Was Enacted in 1991 and the FCC's Orders are Not Entitled to Any Deference ........ 6

3. Plaintiff Cannot Pursue a DNC Claim Regarding Text Messages ........ 8

V. CONCLUSION ........ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................4

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................4

*Benson v. Edgefield*,
174 F.4th 348 (4th Cir. 2026)....................7

*Bostock v. Clayton County, Georgia*,
590 U.S. 644 (2020)....................7

*Braxton v. Lideslambous, Inc.*,
2026 WL 209816 (E.D. Va. Jan. 27, 2026)....................7

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016)....................11, 12, 13

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837 (1984)....................5, 6, 10

*Davis v. CVS Pharmacy, Inc.*,
797 F.Supp.3d 1270 (N.D. Fla. 2025)....................8, 10, 13, 14

*Drazen v. Pinto*,
74 F.4th 1336 (11th Cir. 2023)....................6

*Duguid. La Boom Disco, Inc. v. Duran*,
141 S.Ct. 2509 (U.S. 2021)....................12

*Duran v. La Boom Disco, Inc.*,
955 F.3d 279 (2d Cir. 2020)....................12

*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021)....................10, 11

*Irvin v. Sonic Industries Services, LLC*,
2026 WL 1098403 (N.D. Ga. Apr. 20, 2026)....................13, 17

*James v. Smarter Contact, Inc.*,
828 F.Supp.3d 1367 (M.D. Fla. 2026)....................9, 13, 16

*Lamie v. U.S. Trustee*,
540 U.S. 526 (2004)....................8

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024).................... *passim*

*Lopresti v. Nouveau Essentials*,
2026 WL 964758 (M.D. Fla. Feb. 26, 2026) ....................13, 17

*McCleary-Evans v. Maryland Dept. of Transp., State Highway Admin.*,
780 F.3d 582 (4th Cir. 2015) ....................4

*McGonigle v. Pure Green Franchise Corp.*,
2026 WL 111338 (S.D. Fla. Jan. 15, 2026) ....................17, 18

*McLaughlin Chiropractic Associates, Inc. v. McKesson Corporation*,
606 U.S. 146 (2025).................... *passim*

*Murphy v. DCI Biologicals Orlando, LLC*,
797 F.3d 1302, 1305-07 (11th Cir. 2015) ....................6

*Perrin v. United States*,
444 U.S. 37 (1979)....................8

*Pulsifer v. United States*,
601 U.S. 124 (2024)....................9

*Radvansky v. 1-800-Flowers.com, Inc.*,
2026 WL 456919, at *3 (N.D. Ga. Feb. 17, 2026) ....................7, 13, 15

*Radvansky v. Kendo Holdings, Inc.*,
2026 WL 810929 (N.D. Ga. Feb. 12, 2026) ....................7, 13, 14, 15

*Richards v. Fashion Nova*,
2026 WL 847568 (S.D. Ind. Mar. 26, 2026)....................13, 16

*Richards v. Shein Distribution Corporation*,
2026 WL 847584 (S.D. Ind. Mar. 26, 2026)....................12, 13, 15, 16

*Salcedo v. Hanna*,
936 F.3d 1162, 1169 (11th Cir. 2019) ....................6, 9

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) ....................6, 12, 13

*Sayed v. Naturopathica Holistic Health, Inc.*,
2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) ....................13, 14

*Steidinger v. Blackstone Med. Servs.*,
2026 WL 2028517 (7th Cir. July 14, 2026)........................................................... *passim*

*Stockdale v. Skymount Prop. Grp., LLC*,
825 F.Supp.3d 622, 625 (N.D. Ohio 2026)..........................................................................9

*Stockdale v. Skymount Prop. Grp., LLC*,
825 F.Supp.3d 622 (N.D. Ohio 2026)...........................................................................10, 13, 15

*Trim v. Reward Zone USA LLC*,
76 F.4th 1157 (9th Cir. 2023) ..........................................................................................9

**Statutes**

47 U.S.C.
§227.................................................................................................................4, 6, 11, 12
§227(a)(4) .......................................................................................................10, 11
§227(b).........................................................................................................12, 13
§227(c) ........................................................................................................ *passim*
§227(c)(5) ..................................................................................................... *passim*
§227(e) ............................................................................................................4, 9
§227(e)(1) ...........................................................................................................5
§227(e)(8)(A).......................................................................................................9
§227(e)(8)(B) .......................................................................................................9
§227(e)(8)(c) ......................................................................................................15

Telephone Consumer Protection Act................................................................... *passim*

Va. Code Ann. § 59.1-512(A)...............................................................................................3

Virginia Telephone Privacy Protection Act..............................................................................2

**Other Authorities**

47 C.F.R. §64.1200(c).........................................................................................................3

*In re Rules and Regulations Implementing the TCPA of 1991*,
17 FCC Rcd 17459 (2002)....................................................................................................5

*In Re Rules and Regulations Implementing the TCPA of 1991*,
18 FCC Rcd. 14014 165 (2003).............................................................................................5

Fed. R. Civ. P.
8(a)(2) ..........................................................................................................................3, 4
12(b)(6) ..............................................................................................................................1

Defendant Dom Stores LLC ("Dom Stores" or "Defendant"), by and through its undersigned counsel, respectfully requests that Count I of Plaintiff Andrew James McGonigle's ("Plaintiff") First Amended Class Action Complaint (the "Amended Complaint") be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## I. INTRODUCTION

Plaintiff, who has filed ***more than thirty (30) class actions***[1] asserting claims arising out of the Telephone Consumer Protection Act ("TCPA"), has continued his familiar and longstanding pattern of serial litigation by filing the instant putative class action arising out of text messages that Defendant allegedly sent to his cellular phone. Plaintiff contends that his telephone number

[1] *See e.g. McGonigle v. Bond No. 9*, No. 1:24-cv-01742 (E.D. Va. Oct. 1, 2024); *McGonigle v. Zales Delaware Inc.*, No. 1:24-cv-01820 (E.D. Va. Oct. 15, 2024); *McGonigle v. Shopperschoice.Com, LLC*, No. 3:25-cv-00152 (M.D. La. Oct. 25, 2024); *McGonigle v. Filters Fast LLC*, No. 1:24-cv-02063 (E.D. Va. Nov. 19, 2024); *McGonigle v. HSN, Inc.*, No. 8:24-cv-02712 (M.D. Fla. Nov. 21, 2024); *McGonigle v. Walker & Co. Brands, Inc.*, No. 1:24-cv-02140 (E.D. Va. Nov. 26, 2024); *McGonigle v. FTD, LLC*, No. 1:24-cv-12201 (N.D. Ill. Nov. 26, 2024); *McGonigle v. Midwest Catalog Brands LLC*, No. 3:24-cv-00864 (W.D. Wisc. Dec. 5, 2024); *McGonigle v. Value City Furniture, Inc.*, No. 2:24-cv-04293 (S.D. Ohio Dec. 23, 2024); *McGonigle v. Alliance Entertainment, LLC*, No. 0:24-cv-62443 (S.D. Fla. Dec. 29, 2024); *McGonigle v. Everyday Dose LLC*, No. 1:24-cv-25115 (S.D. Fla. Dec. 30, 2024); *McGonigle v. LG Electronics USA*, No. 1:25-cv-02700 (D.N.J. Jan. 11, 2025); *McGonigle v. D'Artagnan, Inc.*, No. 1:25-cv-00052 (E.D. Va. Jan. 11, 2025); *McGonigle v. Office Depot*, No. 9:25-cv-80069 (S.D. Fla. Jan. 17, 2025); *McGonigle v. Perpay, Inc.*, No. 2:25-cv-00326 (E.D. Pa. Jan. 20, 2025); *McGonigle v. Richmond Fitness, Inc.*, No. 1:25-cv-00103 (E.D. Va. Jan. 21, 2025); *McGonigle v. Skull Shaver, LLC*, No. 1:25-cv-00424 (E.D. Va. Mar. 8, 2025); *McGonigle v. Teleflora LLC*, No. 1:25-cv-00807 (E.D. Va. May 9, 2025); *McGonigle v. Robbins Research Int'l, Inc.*, No. 1:25-cv-00800 (E.D. Va. May 8, 2025); *McGonigle, et al. v. Dickey's Barbecue Restaurants, Inc.*, No. 1:25-cv-1062 (E.D. Va., June 24, 2025); *McGonigle, et al. v. Freedom Debt Relief, LLC*, No. 3:25-cv-5426 (N.D. Cal. June 27, 2025); *McGonigle v. Moriarty Gem Corp.*, No. 1:25-cv-0398 (N.D. Ind. July 18, 2025); *McGonigle v. Omaha Steaks, LLC*, No. 8:25-cv-00509 (D. Neb. Aug. 20, 2025); *McGonigle v. Why Direct LLC*, No. 3:25-cv-00934 (E.D. Va. Nov. 4, 2025); *McGonigle v. Why Direct LLC*, No. 1:25-cv-01961 (E.D. Va. Nov. 4, 2025); *McGonigle v. United Wholesale Mortg., LLC*, No. 2:25-cv-13865 (E.D. Mich. Dec. 2, 2025); *McGonigle v. Pure Green Franchise Corp.*, No. 25-cv-61164 (S.D. Fla. June 10, 2025); *McGonigle v. I.C. System, Inc.*, No. 1:26-cv-00719-MSN-WEF (E.D. Va. Mar. 16, 2026); *McGonigle v. L'Oreal USA S/D, Inc.*, No. 1:26-cv-01507-LMB-WBP (E.D. Va. June 1, 2026).

was registered on the National Do Not Call ("DNC") Registry at the time that these messages were allegedly sent, and he has asserted claims under the TCPA and the Virginia Telephone Privacy Protection Act ("VTPPA"). However, as set forth more fully below, Plaintiff's TCPA claim is deficient and ripe for dismissal.

Namely, Count I of the Amended Complaint must be dismissed because the section of the TCPA that gives rise to Plaintiff's claims, 47 U.S.C. §227(c), does not apply to text messages. Plaintiff's only path to a potential claim is that the Federal Communications Commission ("FCC") previously issued orders and guidance expanding the scope of the TCPA's DNC provision to text messages. However, that landscape was altered when the United States Supreme Court issued its decision in *McLaughlin Chiropractic Associates, Inc. v. McKesson Corporation*, 606 U.S. 146 (2025), holding that trial courts are not bound by the FCC's interpretation of the TCPA and must utilize ordinary principles of statutory interpretation to interpret it. Several district courts have since relied upon *McLaughlin* and held that text messages are ***not*** "telephone calls" for purposes of §227(c) claim, and the Seventh Circuit Court of Appeals issued a recent opinion that reached an identical conclusion. *Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532 (7th Cir. 2026). As *Steidinger* established, courts must interpret the term "telephone call" in §227(c)(5) in the manner that it was written at the time of the TCPA's enactment and it is "undisputed that 'telephone call couldn't have been thought to cover text messages when the TCPA was enacted in 1991, because the first text message was not sent until the following year." *Id*. at 535.

Because an independent reading of the plain and unambiguous text of the TCPA, as it was written and understood in 1991, confirms that §227(c)(5) does not encompass claims arising out of text messages, Count I is fatally flawed and must be dismissed with prejudice.

## II. FACTUAL BACKGROUND

Plaintiff commenced this Action by filing a Class Action Complaint (the "Complaint") against Defendant on March 30, 2026. Dkt. 1. In the Complaint, Plaintiff alleged that Defendant sent at least two text messages to his cellular phone number (the "Number") in September 2024 and October 2024 despite the fact that he purportedly registered the Number on the DNC Registry. *Id*. at ¶¶ 16, 28, 30. Plaintiff alleged that he obtained the Number in August 2024 when he switched phone carriers while moving from Florida to Virginia and that he registered the Number on the DNC Registry in August 2024 despite also alleging that the Number has been on the DNC Registry since 2014. *Id*. at ¶¶ 16-18. Based upon the foregoing, Plaintiff asserted two claims against Defendant. First, Plaintiff asserted a claim arising out of 47 U.S.C. §227(c) and 47 C.F.R. §64.1200(c) based upon Defendant's alleged actions of sending text messages to a telephone number that is on the DNC Registry. *Id*. at ¶¶ 66-74. Second, Plaintiff asserted a claim under Va. Code Ann. § 59.1-512(A), alleging that "Defendant made unsolicited telemarketing text messages to Plaintiff. . . at numbers assigned Virginia area codes, without their prior express invitation or permission." *Id.* at ¶¶ 75-82.

Defendant filed a Motion to Dismiss Plaintiff's Complaint on August 5, 2026 (the "Prior Motion to Dismiss") that sought dismissal of both of Plaintiff's claims. Dkt. 15-16. In lieu of filing a response to the Motion to Dismiss, Plaintiff filed the Amended Complaint on August 6, 2026. Dkt. 18. While Plaintiff did not make any revisions or alterations to his TCPA claim in Count I, he asserted a new VTPPA claim in Count II arising out of Va. Code Ann. 59.1-514(B).

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." For a complaint to survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S., at 556. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S., at 678.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not show[n] [] 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Although the court must accept all the allegations contained in a complaint as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 663. Instead, a complaint must contain factual allegations sufficient to raise a right to relief above the speculative level. *McCleary-Evans v. Maryland Dept. of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015).

## IV. ARGUMENT

### A. Count I of the Amended Complaint Must Be Dismissed Because 47 U.S.C. §227(c) Does Not Prohibit Text Messages

#### 1. Statutory and Regulatory Background

47 U.S.C. §227, the basis for Count I of the Amended Complaint, affords a private right of action to "[a] person who has received more than one ***telephone call*** within a 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. §227(c)(5) (emphasis added). Simply put, §227(c) does not mention text messages, even though other subsections (i.e., §227(e)) distinguish between telephone calls and text messages – a technology which did not exist at the time that the TCPA was passed in 1991. *See e.g. Steidinger*,

182 F.4th at 535 (noting that the first text message was sent in December 1992). Even though, in subsequent years, Congress has amended other subsections in the TCPA to distinguish between telephone calls and text messages (*see, e.g.*, §227(e)(1) (making it unlawful to use a text messaging service to knowingly transmit misleading caller identification information)), Congress has left §227(c) untouched. Today, §227(c) continues to refer only to ***telephone calls***.

In 2002, the FCC issued a *Notice of Proposed Rulemaking* regarding its desire to update the TCPA to account for "[n]ew technologies" that emerged since the TCPA's enactment. *See In re Rules and Regulations Implementing the TCPA of 1991*, 17 FCC Rcd 17459, ¶ 1 (2002). Then, in 2003, the FCC proclaimed the term "call" under the TCPA encompasses both voice calls and text calls. *In Re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014 ¶ 165 (2003) ("2003 Order"). The FCC identified no statutory basis or authority for concluding that a text message was a "call." Rather, the FCC believed that it could make such a decree because it viewed it as consistent with the goals of the TCPA.

Until recently, *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984), required courts to accord considerable weight "to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations." However, in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412 (2024), the U.S. Supreme Court overruled *Chevron* and held that courts "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." In addition, the Supreme Court held that "courts need not and under the [Administrative Procedure Act] may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id*. The Supreme Court further noted that "when a particular statute delegates authority to an

agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it." *Id*.

Back when *Chevron* was still good law, several courts held that text messages were a "call" under the impression that they were obligated to defer to the FCC's interpretation – even if there were other interpretations available. *See, e.g., Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953-54 (9th Cir. 2009) (citing *Chevron* and holding that courts "must defer" to the FCC's determination that a text message was a "call" because the FCC's interpretation of §227 was reasonable and entitled to deference); *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305-07 (11th Cir. 2015) (deferring to the 2003 Order, declaring that "[d]istrict courts may not determine the validity of FCC Orders, including by refusing to enforce an FCC interpretation," and stating that the Hobbs Act requires district courts to afford full deference to FCC final orders).

Indeed, the Eleventh Circuit Court of Appeals correctly recognized that the TCPA (in relevant part) was "completely silent" on text messages, which could not have been contemplated within the purview of the TCPA when it was enacted; rather "it is ***only*** through the rulemaking authority of the FCC that the voice call provisions of the TCPA have been extended to text messages." *Salcedo v. Hanna*, 936 F.3d 1162, 1169 (11th Cir. 2019) (emphasis added), *abrogated on other grounds by Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023).[2]

**2. Following *Loper* and *McLaughlin*, the TCPA Must Be Interpreted as Written When it Was Enacted in 1991 and the FCC's Orders are Not Entitled to Any Deference**

As set forth *supra*, *Loper* eliminated *Chevron* deference. This ruling returned courts to their traditional function "to decide whether the law means what the agency says." *Loper*, 603 U.S. at

[2] *Salcedo* was abrogated on the issue of standing by *Draze*n, and the *Draze*n court did not engage in a separate statutory analysis of the TCPA's applicability to text messages. Instead, it relegated that issue to *dicta* in a footnote. 74 F.4th at 1343 n.5.

392. Pursuant to *Loper*, courts must utilize "the reading the court would have reached if no agency were involved." *Id*. at 400 (internal quotations and citation omitted). In addition, "every statute's meaning is fixed at the time of enactment." *Id*. (internal quotations and citation omitted); *see also Bostock v. Clayton County, Georgia*, 590 U.S. 644, 654 (2020) ("[t]his Court normally interprets a statute in accord with the ordinary public meaning of its terms at the time of its enactment").

Thereafter, in *McLaughlin*, the Supreme Court confirmed that trial courts are "not bound by the FCC's interpretation of the TCPA." 606 U.S. at 155. In addition, the Supreme Court directed courts to interpret the TCPA "under ordinary principles of statutory interpretation." *Id*. After *Loper* and *McLaughlin*, this Court owes no deference to the FCC's interpretations and must interpret the TCPA based upon ordinary principles of statutory construction. *See e.g. Benson v. Edgefield*, 174 F.4th 348, 356 (4th Cir. 2026) (remanding to the district court to address *Loper* in the first instance and declaring that federal courts may no longer defer to an agency interpretation of a law simply because a statute is ambiguous); *Braxton v. Lideslambous, Inc.*, 2026 WL 209816, at *13 (E.D. Va. Jan. 27, 2026) (holding that instead of deferring to an agency's interpretation of a statute, federal courts must exercise their independent judgment and interpret law to determine its "best reading" following *Loper*); *Radvansky v. Kendo Holdings, Inc.*, 2026 WL 810929, at *2 (N.D. Ga. Feb. 12, 2026) ("*Radvansky I*") ("[T]his Court must independently—and without deference to the FCC's decision—evaluate Defendant's argument that the term 'telephone call' excludes text messages"); *Radvansky v. 1-800-Flowers.com, Inc.*, 2026 WL 456919, at *3 (N.D. Ga. Feb. 17, 2026) ("*Radvansky II*") (stating that *McLaughlin* and *Loper* have "left district courts to decide, with fresh eyes, whether §227(c)(5)'s reference to 'telephone call[s]' also encompasses text messages").

The required outcome is simple: ***a text message is not a "call" under the TCPA.*** It is implausible to suggest that Congress intended for "call" to mean "call or text message" when it

passed the TCPA in 1991, given that the first text message was sent *after* the TCPA was enacted. *See e.g. Steidinger*. Moreover, and as explained herein, while Congress later amended the TCPA to bring text messages within its scope under different provisions of the TCPA, it nonetheless did not amend §227(c) to include text messages. This is fatal to Plaintiff's TCPA claim.

**3. Plaintiff Cannot Pursue a DNC Claim Regarding Text Messages**

It is well-established that "when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004); *see also Perrin v. United States*, 444 U.S. 37, 42 (1979) ("unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning"). "Courts interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences." *Loper*, 603 U.S. at 403.

To this end, Congress could not have meant for a "telephone call" to mean text message, based on the simple fact that text messaging did not exist in 1991 when the TCPA was enacted. It is inconceivable that Congress intended "telephone call" to encompass a non-voice technology that had not yet been used, and there is no suggestion in the TCPA or its legislative history that the phrase "call" was intended to cover text messages. *See e.g. Davis v. CVS Pharmacy, Inc.*, 797 F.Supp.3d 1270, 1273 (N.D. Fla. 2025) (dismissing plaintiff's claim under §227(c) arising out of text messages, declaring that "[c]ertainly, no ordinary person would think of a text message as a '*telephone* call,'" and stating that this "conclusion—supported by the ordinary public meaning at the time of the provision's enactment--is enough to end this case") (emphasis in original). As the Supreme Court emphasized in *Loper*: "[t]hat is the whole point of having written statutes; every statute's meaning is fixed ***at the time of enactment***." 603 U.S. at 400 (emphasis added).

"In 1990, Webster's Dictionary defined the noun 'call' as 'the act of calling on the telephone' and 'telephone' as 'an instrument for reproducing sounds at a distance…one in which sound is converted into electrical impulses for transmission by wire." *Stockdale v. Skymount Prop. Grp., LLC*, 825 F.Supp.3d 622, 625 (N.D. Ohio 2026). "Under these definitions, 'telephone call' could not include modern-day text messages because text messages do not use a telephone to reproduce sounds at a distance." *Id.* at 625-26 (dismissing §227(c)(5) claim arising out of text messages); *see also James v. Smarter Contact, Inc.*, 828 F.Supp.3d 1367 (M.D. Fla. 2026) (dismissing §227(c)(5) claim arising out of text messages and holding that a text message is not included in the ordinary public meaning of "telephone call" from 1991 because it does not use a telephone to reproduce sounds at a distance).

Notably, and consistent with a narrower interpretation of "telephone call," Congress later amended the TCPA to bring text messages within its scope under a *different* provision regarding Caller ID requirements. *See, e.g., Salcedo*, 936 F.3d at 1169 n.7 (*citing* Consolidated Appropriations Act, 2018, H.R. 1625, 115th Cong., Pub. L. No. 115-141, div. P, § 503(a) (2018)). In doing so, Congress specifically distinguished between "a call made using voice service" and a "text message sent using a text message service." 47 U.S.C. §227(e)(8)(A), (B). This amendment, however, was not expanded to cover the subsection on which Plaintiff bases his claim.

"In a given statute, the same term usually has the same meaning and different terms usually have different meanings." *Pulsifer v. United States*, 601 U.S. 124, 129 (2024). Congress did not amend §227(c) to include text messages, even though it could have done so, and even though it demonstrated an understanding of the difference between a call and a text message. Indeed, if Congress intended for the term "telephone call" in §227(c) to include text messages, the statutory delineation between calls and text messages in §227(e) would be meaningless. *Trim v. Reward*

*Zone USA LLC*, 76 F.4th 1157, 1162 (9th Cir. 2023) ("If voice calls encompassed text messages, the inclusion of the term text message would be surplusage, and Congress would have written the statute in a manner contrary to a basic canon of statutory construction, that a statute should be interpreted so as not to render one part inoperative"); *Davis*, 797 F.Supp.3d at 1274 (rejecting plaintiff's invitation to afford identical meanings to the term "telephone call" in §227(c)(5) and the term "telephone call or message" in §227(a)(4) and reaffirming the presumption that "when a statute uses one term in one place and a distinct term elsewhere, the difference matters – that is, the distinct words have different meanings").

Although the FCC believed that it was justified as a matter of policy in expanding the TCPA to account for "new technologies," the agency's approach to the statute did not address the U.S. Supreme Court's directive. And specifically in the context of the TCPA, this means even where the TCPA may be "outdated," courts "cannot rewrite the TCPA to update it for a modern technology." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 397 (2021) (rejecting the notion that the TCPA is an "agile tool" "malleably" drafted to mold to changing technologies). *Loper* and *McLaughlin* reaffirm this same directive. One court that recently held that text messages cannot give rise to §227(c) claim acknowledged that "its decision—as dictated by *Loper Bright* and *McLaughlin*—arguably stands in contrast to decades of FCC agency interpretations, court decisions, and even congressional intent" and declared that such "contradictory decisions are the natural consequence of the Supreme Court overruling [*Chevron*] and creating a gap between longstanding agency interpretations that Congress may have presumed to be valid and the plain text of statutes." *Stockdale*, 825 F.Supp.3d at 626-27. The court further declared that "it is for Congress—not this Court—to fill those gaps in the wake of *Chevron*'s reversal." *Id*. at 627.

The Seventh Circuit Court of Appeals, armed with the directive to interpret the TCPA based upon its plain text and without deference to the FCC's Orders following *Loper* and *McLaughlin*, recently held in *Steidinger* that "texts are not calls" and that text messages do not fall within the private right of action created by §227(c)(5). 182 F.4th at 535. The court began by interpreting §227(c)(5) in accord with its ordinary public meaning at the time of its enactment and declared that it was "undisputed that 'telephone call' couldn't have been thought to cover text messages when the TCPA was enacted in 1991, because the first text message was not sent until the following year." *Id*. The court further emphasized that elsewhere in § 227(c), Congress used the broader term "telephone solicitation," which the TCPA defines to include "the initiation of a *telephone call or message*." *Id.* at 536 (*citing* 47 U.S.C. §227(a)(4)) (emphasis in original). By contrast, §227(c)(5)'s private right of action arises only from the receipt of more than one "telephone call" within a 12-month period. *Id.* The court reasoned that this deliberate variation in statutory language reflected Congress's intent to distinguish between calls and messages, foreclosing an interpretation that would read text messages into § 227(c)(5). *Id.*

The court also found that the plaintiffs were mistaken in relying upon prior Supreme Court and circuit court decisions to support their interpretation of §227(c)(5), most notably *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016). *Id*. at 537. It held that such reliance upon *Campbell-Ewald* was misplaced because it interpreted a different provision of §227, did not undertake any substantive analysis of the meaning of the term "call," and was decided before the Supreme Court declared in *Duguid* that *Campbell-Ewald* did not resolve whether a text message is a call. *Id*. at 537-38. For the same reason, the court declined to follow decisions from other circuits that deemed text messages to be calls under the TCPA, concluding that those cases either addressed different statutory provisions or relied on reasoning inconsistent with the statute's text. *Id.* The court

likewise rejected the plaintiffs' reliance upon the FCC's interpretation of "call," explaining that it was not bound by the FCC's interpretation following *McLaughlin*, that the agency's guidance concerned different portions of the TCPA and that, in any event, the meaning of §227(c)(5) presents a question of statutory interpretation for courts to review de novo. *Id*. at 538-39.

While Plaintiff cites to a pair of cases to support his misguided contention that a text message is a "call" for purposes of his TCPA claim (Dkt. 1 at ¶ 68), both of these decisions suffer from the very defects identified in *Steidinger*. For instance, *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n. 4 (2d Cir. 2020) interpreted a different subsection of §227, merely repeated the assumption drawn in *Campbell-Ewald* in a footnote, and did not independently analyze whether the term "call" in § 227(c)(5) encompasses text messages.[3] Additionally, *Satterfield* is even less persuasive following *Loper* and *McLaughlin* insofar as it also interpreted a different subsection of §227 and its conclusion rested largely upon deference to the FCC's interpretation of the term "call."

Moreover, in a pair of recent decisions dismissing claims that are nearly identical to Plaintiff's and holding that text messages do not fall within the scope of the term "telephone call" under §227(c)(5), each court rejected similarly-misguided attempts to place reliance upon *Satterfield*. For instance, in *Richards v. Shein Distribution Corporation*, 2026 WL 847584, at *3 n. 2 (S.D. Ind. Mar. 26, 2026) ("*Richards I*"), the court rejected the plaintiff's reliance upon *Satterfield* for three reasons: 1) *Satterfield* adjudicated claims under §227(b) rather than §227(c); 2) its definition of "call" was sourced from a 2002 edition of a dictionary rather than a 1990s edition contemporaneous with the TCPA's enactment; and 3) its conclusion was premised upon

[3] In addition, the Supreme Court vacated the Second Circuit's decision in *Duran* and remanded for further consideration in light of its holding in *Duguid*. *La Boom Disco, Inc. v. Duran*, 141 S.Ct. 2509 (U.S. 2021).

undue reliance on FCC guidance that was no longer proper following *Loper* rather than the unambiguous definition of the term "call."

Similarly, in *Radvansky I*, the court stated that it was "not persuaded" by the plaintiff's request to adopt the *Satterfield* court's approach because it was decided prior to *McLaughlin*. 2026 WL 810929, at *3, n. 2. Moreover, the court recognized that *Campbell-Ewald* merely "assumed, but did not decide," whether a text message constitutes a "call" under the TCPA and offers no basis for disregarding the plain text enacted by Congress. *Id.* at *3. Because courts no longer defer to an agency's interpretation of statutory text, *Satterfield*'s interpretation of §227(b) and outdated reasoning carries substantially less force in determining the meaning of the term "telephone call" in §227(c)(5). Consequently, neither *Satterfield* nor *Campbell-Ewald* can be used to undermine *Steidinger* and the array of other post-*McLaughlin* decisions that contain similar conclusions.

Moreover, *Steidinger* did not emerge in a vacuum insofar as at least ten district courts have also interpreted *Loper*, *McLaughlin*, and the statutory interpretation principles set forth above in holding that text messages are not "telephone calls" for purposes of a DNC claim arising out of §227(c): *Richards I*; *Radvansky I*; *Radvansky II*; *Davis*; *Stockdale; James*; *Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025); *Lopresti v. Nouveau Essentials*, 2026 WL 964758 (M.D. Fla. Feb. 26, 2026); *Richards v. Fashion Nova*, 2026 WL 847568 (S.D. Ind. Mar. 26, 2026) ("*Richards II*"); and *Irvin v. Sonic Industries Services, LLC*, 2026 WL 1098403 (N.D. Ga. Apr. 20, 2026).[4]

---

[4] Defendant acknowledges that other district courts have issued decisions following *McLaughlin* that reached a contrary conclusion and held that text messages may give rise to a §227(c) claim arising out of a purported DNC violation. However, as the court in *Stockdale* noted, a number of these decisions engaged in flawed textual analyses that were based upon the dictionary definition of "call" from 2002 or later or that relied on definitions of "call" from 1991 "but failed to consider the contemporaneous definition of the modifying 'telephone'." 825 F.Supp.3d at 625, n. 5; *see also James*, 828 F.Supp.3d at 1371 (declining to follow contrary decisions and noting that those

In *Davis*, the court granted the defendant's motion to dismiss and held that "a text message is not a 'telephone call'" for purposes of a DNC claim under §227(c). 797 F.Supp.3d at 1272. The court explained that "[n]o ordinary user of the English language would write the sentence 'John Called Sue' intending to mean 'John sent a text message to Sue,' nor would any ordinary reader interpret the sentence in that manner." *Id*. at 1273. Moreover, the court reasoned that Congress's use of the term "telephone call or message" in a neighboring TCPA provision only undermined the plaintiff's position because it showed that Congress does not use the term "telephone call" to encompass all "messages." *Id*. at 1274. In addition, the court noted that its "role is not to look beyond clear language to ascertain Congress's purpose" and that the best evidence of that purpose is the language of the statute itself. *Id*. Finally, the court rejected the plaintiff's argument that the FCC's conclusions in the 2003 Order were entitled to "appropriate deference," noted that *McLaughlin* calls for "appropriate respect" instead, and held that "one can provide appropriate respect to an agency's view without adopting a statutory interpretation that conflicts with the ordinary public meaning of clear statutory text." *Id*. at 1275.

In *Sayed*, the court dismissed the plaintiff's complaint and held that a text message is not a "telephone call" for purposes of a §227(c) claim. 2025 WL 2997759, at *1. The court held it was only through the FCC's rulemaking authority that the voice call provisions of the TCPA have been extended to texts, and that district courts are not bound by the FCC's interpretation of the TCPA following *McLaughlin*. *Id*. Similarly, in *Radvansky I*, the court granted the defendant's motion for judgment on the pleadings because "text messages do not fall within the term 'telephone call' under § 227(c)(5)," and declared that the plaintiff's claims failed as a matter of law. 2026 WL

---

courts relied upon a 2002 definition of "call" and "compound the error by neglecting to consider the modifying effect on 'call' from 'telephone' as understood in 1991").

810929, at *3. Starting with the plain language of the statute, the court concluded that the term "telephone call" does not encompass text messages because the two are distinct forms of communication. *Id.* at *2. The court further observed that Congress has amended the TCPA on multiple occasions since its enactment yet never expanded the relevant provision to include text messages. *Id.* at *3.

In *Radvansky II*, the court held that the phrase "telephone call" in § 227(c)(5) does not encompass text messages and granted the defendant's motion to dismiss. 2026 WL 456919, at *5. In reaching its decision, the court relied upon the fact that Congress amended the TCPA in 2019 to add the phrase "text message" in §227(e)(8)(c) and chose to leave §227(c)(5) unamended and it presumed that Congress intended for the latter to encompass only telephone calls because distinct words within the same statute have different meanings. *Id*. at *3. The court further held Congress's use phrase "telephone call or message" in a neighboring provision of the TCPA showed that it does not use the term "telephone call" to encompass all messages. *Id*. at *4.

In *Stockdale*, the court dismissed the plaintiff's complaint and held that "the term 'telephone call' as used in Section 227(c)(5) of the TCPA does not encompass 'text messages.'" 825 F.Supp.3d at 624. The court determined that it was required to "independently—and without special deference to an agency interpretation—determine" the meaning of the term "telephone call" as it is used in §227(c)(5), and it interpreted the plain meaning of this term as it existed at the time that Congress enacted the TCPA. *Id*. at 625. The court then analyzed the definition of "call" in the version of Webster's Dictionary that existed in 1990 and held that this definition could not include modern-day text messages. *Id*. at 625-26.

In *Richards I*, the court granted the defendant's motion to dismiss and held that the term "telephone call" in §227(c)(5) does not include text messages. 2026 WL 847584, at *5. The court

found that "[f]or many years, most courts assumed that a text message is a 'telephone call' because the [FCC] said so, and the FCC was entitled to deference" but that courts may no longer defer to agencies to interpret ambiguous statutes following *Loper* and *McLaughlin*. *Id*. at *2. In reaching its holding, the court independently interpreted the meaning of the text of §227(c)(5), cited the fact that text messages did not exist when the TCPA was enacted in 1991, applied the definition of "call" that was contained in the 1990 version of Merriam Webster's Dictionary, and refused to defer to the FCC's interpretation of §227(c)(5) in its 2003 FCC Order. *Id*. at *2-4. The court also declared that "[i]t is not for a court to legislate by reading into the TCPA something that is not there" and that it would confine itself to "its assigned role which does not include legislating." *Id*. at *5; *see also Richards II*, 2026 WL 847568, at *5 (issuing an identical decision to *Richards I*, granting defendant's motion to dismiss, and holding that the term "telephone call" in §227(c)(5) does not include text messages).

In *James*, the court held that text messages do not fall within the ambit of §227(c)(5) and that the plaintiff's §227(c) claim arising exclusively out of text messages was ripe for dismissal. 828 F.Supp.3d at 1370. The court explained that *McLaughlin* permits district courts to interpret the TCPA unbound by the FCC's interpretations and precedent that deferred to FCC interpretations. *Id*. The court also applied the ordinary public meaning of the terms "telephone" and "call" as they existed in 1991 and held that a text message does not fall within §227(c)(5)'s definition of "telephone call" regardless of whether the reader used the noun or verb form of the term "call." *Id*. at 1370-71. In doing so, the court rejected the plaintiff's misguided interpretation and held that she neglected to consider the modifying effect on "call" from "telephone" as understood in 1991. *Id*. at 1371.

In *Irvin*, the court granted the defendant's motion to dismiss and held that 47 U.S.C. §227(c)(5) does not apply to text messages. 2026 WL 1098403, at *5. The court explained that in light of *McLaughlin*, it was required to "independently – and without deference to the FCC's interpretation – evaluate Defendant's argument that the term 'telephone call' excludes text messages." *Id*. at *2. The court rejected the plaintiff's reliance upon pre-*McLaughlin* cases as well as authorities that relied upon the FCC's interpretation of the TCPA as applying to text messages, and it held that the statutory text of 47 U.S.C. §227(c)(5) was clear: "a text message is not a telephone call." *Id*. at *2-3. In addition, the court rejected the plaintiff's invitation to defer to the FCC's interpretations of the TCPA and found that he was advocating for exactly the type of deference to agency interpretation that the Supreme Court rejected in *Loper*. *Id*. at *5.; *see also Lopresti*, 2026 WL 964758, at *5 (holding that defendant was entitled to judgment on the pleadings because plaintiff lacked a private right of action to assert a claim pursuant to §227(c) arising out of text messages, that that it was only through the FCC's rulemaking authority that the voice call provisions of the TCPA have been extended to text messages, and that district courts are not bound by the FCC's interpretation of the TCPA following *McLaughlin*).

Moreover, ***in a recent decision involving Plaintiff***, the court granted the defendant's motion to stay discovery pending disposition of a motion to dismiss where it argued McGonigle's DNC claim should be dismissed because § 227(c) does not apply to text messages. *McGonigle v. Pure Green Franchise Corp.*, 2026 WL 111338, at *1 (S.D. Fla. Jan. 15, 2026). After first "tak[ing] 'preliminary peek' at the motion and the Complaint to see whether the Plaintiff's claims are meritless," the court agreed to stay discovery pending the outcome of the motion to dismiss. In granting the stay, the court advised that it would decide the motion to dismiss "by applying the canons of construction, analyzing precedent, and looking to other persuasive court opinions, not

by deferring to the Federal Communication Commission's interpretation." *Id*. at *2. The court further declared it was not required to defer to the FCC's interpretation of §227(c)(5) and cited to *Loper* for the proposition that "agencies have no special competence in resolving statutory ambiguities. Courts do." *Id*.[5]

Thus, the combination of *Loper Bright* and *McLaughlin* and its progeny results in the following principle: the §227(c) at hand must be interpreted to reach the best interpretation, as it was written in 1991, without influence by the modern-day transition from landline telephones to cellular telephones and growing prominence of text messaging, and unconstrained by the views and interpretations of the FCC. When applying the plain language of this statutory text, it becomes apparent that a text message is not a "telephone call" in any ordinary, normal sense of the word and cannot be actionable under §227(c)(5), unless and until Congress amends the TCPA.

## V. CONCLUSION

For the reasons set forth more fully above, Defendant respectfully requests that this Court enter an Order granting the instant motion and dismissing Count I of the Amended Complaint with prejudice.

Respectfully submitted,

*/s/ Benjamin R. Reyes*

Benjamin R. Reyes (VA Bar No.: 98369)
Victoria Ortega (VA Bar No.: 88957)
BLANK ROME LLP
1825 Eye Street, NW
Washington, DC 20006
(202) 420-2787
Benjamin.Reyes@blankrome.com

[5] Seeing the writing on the wall and instead of waiting for the court in *Pure Green* to rule that unwanted text messages do not give rise to a DNC claim, potentially torpedoing his dozens of other actions, McGonigle voluntarily dismissed his suit without prejudice. A true and correct copy of the court's docket sheet from *Pure Green* is attached hereto as **Exhibit A**.

Philip N. Yannella (*admitted pro hac vice*)
Thomas P. Cialino (*admitted pro hac vice*)
BLANK ROME LLP
130 North 18th Street
Philadelphia, PA 19103
(215) 569-5500
philip.yannella@blankrome.com
thomas.cialino@blankrome.com
*Counsel for Defendant, Dom Stores LLC*

Dated: August 20, 2026

**CERTIFICATE OF SERVICE**

I certify that on August 20, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically by CM/ECF.

*/s/Benjamin R. Reyes*
Benjamin R. Reyes